# JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law

| | |
|---|---|
| Charles Joseph | 32 Broadway, Suite 601 |
| D. Maimon Kirschenbaum | New York, NY 10004 |
| Denise Schulman | Phone (212) 688-5640 |
| Josef Nussbaum | Fax (212) 688-2548 |
| Lucas C. Buzzard | www.jk-llp.com |

November 19, 2018

Hon. Vernon S. Broderick, U.S.D.J.
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

   Re: *Reinoso v. Downtown Restaurant Company LLC, et al.* **17-cv-8509 (VSB)**

Dear Judge Broderick:

  We represent Plaintiff Jose Reinoso and opt-in Oscar Gonzalez (together, "Plaintiffs") in the above-referenced action. We submit this letter to respectfully request that the Court approve the Settlement Agreement and Release ("Agreement") as a fair and reasonable resolution of a bona fide dispute in accordance with, *inter alia*, the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and so order the parties' stipulation of dismissal. The Agreement is submitted herewith as Exhibit 1, and the Parties' Stipulation of Dismissal is Exhibit A to the Agreement.

  Plaintiffs allege that they worked at Defendants' restaurant Cipriani Downtown as tipped food-service employees. Plaintiffs allege they were paid an hourly wage and tips, and that Defendants took a tip credit towards its minimum wage obligations for all Plaintiffs hours worked. The Complaint in this case alleges that (1) Defendants were not entitled to take a tip credit towards its minimum wage obligations to Plaintiffs under the FLSA and New York law because Defendants did not give Plaintiffs the requisite notice; and (2) Defendants did not give Plaintiff accurate wage statements required under N.Y. Lab. L. § 195(3). Plaintiff Reinoso also raised allegations of discrimination which were settled in a prior agreement between Mr. Reinoso and Defendants and are not the subject of this Agreement. In terms of the wage and hour allegations, the Complaint sought recovery of (1) the tip credit taken; (2) liquidated damages; and (3) statutory damages for violations of N.Y. Lab. L. § 195. While the case was brought as a putative class/collective action, the Parties reached a settlement in principal before any certification motion practice on behalf of the Plaintiffs only.

  As set forth in the Agreement, the Parties have agreed to settle the wage and hour claims for $33,000. Prior to reaching the settlement, Defendants produced Plaintiffs' personnel files, wage statements, payroll records, and time records. From this document production, Plaintiffs were able to determine the precise number of hours that they worked and for which Defendants took a tip credit towards its minimum wage obligations.

"In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky,* 900 F. Supp. 2d 332 at 336 (citations and quotations omitted); *see also, e.g., Tayun v. JMFF LLC*, No. 16-CV-8490 (VSB), 2018 U.S. Dist. LEXIS 172058, at *2 (S.D.N.Y. Oct. 3, 2018)(Broderick J.).

The Agreement is reasonable and should be approved because it is a fair compromise of disputed claims in light of the risks in this case. As set forth in the copy of an Excel spreadsheet attached hereto as Exhibit 2, Plaintiff Reinoso's and Plaintiff Gonzalez's "best case" actual compensatory damages based on the allegations in the Complaint are approximately $24,000 and $25,000, respectively. In addition, as set forth in the attached spreadsheet, Defendants could be liable to pay Plaintiff significant penalties, bringing plaintiffs maximum recovery to $53,000 and $56,000, respectively. These figures are based on allegations that Defendants contest and which carried significant risks, as set forth in greater detail below.

Out of the approximately $24,000 in unpaid minimum wages allegedly owed to Plaintiff Reinoso, a maximum of $3,000 is attributable to unpaid tip minimum wages covered by the FLSA and its maximum liability period three years from the filing of the complaint (*i.e.*, 2017, 2016, 2015 and November and December 2014). This is because the New York State tip credit minimum wage that Defendants paid Plaintiff during most of this time was higher than the federal minimum wage. Similarly, out of the approximately $25,000 in unpaid minimum wages allegedly owed to Plaintiff Gonzalez, a maximum of $1,200 is attributable to unpaid tip minimum wages covered by the FLSA and its maximum liability period three years from the filing of the complaint (Mr. Gonzalez stopped working for Defendants in approximately May 2016 and he has approximately one year of FLSA damage). The remaining unpaid wages are NYLL damages. Thus, Plaintiffs, who will both receive more than $10,000 after attorneys' fees and costs are set to recover far more than their "hard" FLSA damages.

The Plaintiffs' claims were properly settled at a discount, as there was substantial risk that Defendants would have been able to defeat or to limit a large percentage of the damages alleged by Plaintiffs. For example, Defendants demonstrated in discovery that at least for some the time, they were legally entitled to take a tip credit towards their minimum wage obligations to Plaintiffs because Plaintiffs were, in fact, provided proper notice under the FLSA and New York law. For example, Defendants produced tip credit notices they issued Plaintiff Reinoso for 2016 and 2017. In addition, Defendants claimed to have provided Plaintiffs with notices in other years, though they did not produce them.

Additionally, it is Defendants' position that Plaintiff understood the manner in which Defendants applied the tip credit, which, according to a minority opinion in this District, may operate as a complete defense to the NYLL tip credit claim. *See Carvente-Avila v. Chaya Mushkah Rest. Corp.*, No. 12-CV- 5359 (KBF), 2016 U.S. Dist. LEXIS 75396 (S.D.N.Y. Mar. 1, 2016)(finding that failure to provide written notice of the tip credit does not in and of itself

2

invalidate an employer's taking of the allowance).While Plaintiffs believe this particular argument to be erroneous and unlikely to prevail, it is significant inasmuch as it would certainly have involved time consuming motion practice.  Moreover, if the argument did prevail, it would completely wipe out Plaintiffs' claims. By accepting Defendants' offer, Plaintiffs completely eliminated the potential burdens and expense they faced in establishing their claims.  *See, e.g., Cruz v. Jos Concept LLC*, No. 16-CV-8377 (VSB), 2017 U.S. Dist. LEXIS 139079, at *4-5 (S.D.N.Y. Aug. 26, 2017) (approving an FLSA settlement where the plaintiff recovered 30% of their anticipated best case scenario recovery based on, among other factors "the uncertainty of recovery, as well as inherent risks and costs associated with trial[…]")(Broderick J.).

This settlement was the result of arm's-length negotiations after Defendants produced relevant documents regarding Plaintiffs' employment.  In addition, the Parties engaged in hard fought litigation with respect to the discovery that Plaintiffs were entitled to as well as the scope of the depositions that were taken in this Action.  Thus, Plaintiffs were able to fairly evaluate the strengths and weaknesses of their claims and the ultimate settlement. In light of the strong recovery the settlement provides Plaintiff, the Agreement is fair and reasonable.

Finally, the Agreement provides for reasonable attorneys' fees and costs to Plaintiffs' counsel.  Under the Agreement, Plaintiff's counsel will receive one-third of the settlement – or $11,000 – as attorneys' fees. The proposed fee award of one-third of the settlement amount should also be approved because it was consensual and agreed to by the Plaintiffs.  A request for a one-third fee is also consistent with Plaintiffs' retainer agreement.  *See Mireku v. Red Vision Sys., Inc.*, No. 11 Civ. 9671, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (noting the consensual nature of the fee arrangement); *see also Rangel v. 639 Grand St. Meat & Produce Corp.,* No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs.  This fee arrangement is routinely approved by courts in this Circuit."). Moreover, "[c]ourts regularly approve attorney's fees of up to one-third of the settlement amount in FLSA cases." *Cruz*, 2017 U.S. Dist. LEXIS 139079, at *5 (Broderick J.) (citing *Gaspar v. Personal Touch Moving, Inc.*, No. 13-cv-8187 (AJN), 2015 U.S. Dist. LEXIS 162243, 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015) ("Fee awards representing one third of the total recovery are common in this District.")).[1]

To the extent that the Court deems a "lodestar" crosscheck appropriate, Plaintiffs' counsel's lodestar is $32,345, as set forth in the chart below, which summarizes the time from Plaintiff's counsels' contemporaneous time records. (Plaintiffs' counsel's firm time records are attached hereto as "Exhibit 2.")

---

[1] Plaintiffs' counsel notes that the prosecution of this lawsuit included time spent on both discrimination claims and FLSA claims, but that the greater majority of this time cannot be meaningfully severed so as to parse out the FLSA time alone.

| Biller | Hours | Rate | Total |
|---|---|---|---|
| D. Maimon Kirschenbaum[2] | 25.9 | $450 | $11,655 |
| Josef Nussbaum[3] | 44.4 | $350 | $15,540 |
| Lucas C. Buzzard[4] | 10.6 | $300 | $3,180 |
| Denise A. Schulman[5] | 0.3 | $400 | $120 |
| Paralegal[6] | 14.8 | $125 | $1,850 |
|  |  | **Total:** | **$32,170** |

For the foregoing reasons, Plaintiff respectfully requests that the Court approve the parties' Agreement and so order the stipulation of dismissal.

We thank the Court for its attention to this matter.

Respectfully submitted,

 /s/*Josef Nussbaum*
Josef Nussbaum

cc: All counsel of record (via ECF)

---

[2] D. Maimon Kirschenbaum graduated from Fordham University School of Law in 2005 and has worked at Joseph & Kirschenbaum LLP ("JK") since then. As a result of his accomplishments representing food service workers in New York City, he became a member/partner of the firm in May 2007. Mr. Kirschenbaum currently manages the firm, while also maintaining a docket comprised largely of individual and class/collective wage and hours lawsuits. His billable rate has been approved at $450 per hour. *See e.g., Lizondro-Garcia v. Kefi LLC,* No. 12 Civ. 1906, 2015 U.S. Dist. LEXIS 85873, at *20 (S.D.N.Y. July 1, 2015).

[3] I graduated from McGill University's Faculty of Law in 2009 and have been a litigation associate at Joseph & Kirschenbaum LLP ("JK") since June 2011. The majority of my docket involves individual and class/collective wage and hour actions. My billable rate has been approved by Courts in this Circuit at $325. *See, e.g., Quito v. Kuo Yang, et al,* 14 Civ. 3926, *Dkt.* No. 54.

[4] Lucas C. Buzzard ("LCB") received his J.D. from American University, Washington College of Law in 2010. Since that time, he worked as a law clerk in the Staff Attorney's Office of the United States Court of Appeals for the Second Circuit and then as a law clerk to the Hon. Peter W. Hall of the United States Court of Appeals for the Second Circuit. Mr. Buzzard joined JK in September 2015. The majority of his current docket involves employment wage-and-hour and discrimination cases.

[5] Denise A. Schulman ("DAS") received her J.D. from New York University School of Law in 2008 and joined JK in 2009. She is now a partner at the firm.

[6] The paralegal who works on this case is Carmenliggia Espinal. Ms. Espinal has worked for J&K as a paralegal since September 2017. She received a B.A. in International Criminal Justice from John Jay College of Criminal Justice in 2011, an M.A. in public administration from John Jay College of Criminal Justice in 2013, and an M.A. in paralegal studies from George Washington University in 2017. Before joining J&K, Ms. Espinal worked as a legal assistant at Gordon & Silber, P.C., Koster, Brady and Nagler, LLP, and Outten & Golden, LLP.

4